UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| ELLEN L. B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-cv-10 |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED OPINION AND ORDER**
**(Docs. 8, 11)**

Plaintiff Ellen B. brings this action under 42 U.S.C. § 405(g), requesting reversal of the decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). (Doc. 3.) Plaintiff filed a Motion for Order Reversing the Decision of the Commissioner (Doc. 8), and the Commissioner filed a Motion for Order Affirming the Commissioner's Decision (Doc. 11).

For the following reasons, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED. The case is REMANDED for further proceedings consistent with this order.

## Background

Plaintiff was 58 years old at the time of her alleged disability onset date of February 28, 2019. At the hearing in front of the Administrative Law Judge ("ALJ"), Plaintiff testified that she developed bad headaches, numbness in her hands and feet, back and neck pain, swelling in her hands, and fatigue after a fall in 2018. (AR 67–70.) She testified that her headaches felt like someone was hitting her in the back of the head and that she experiences the headaches daily and has migraines every couple of weeks. (AR 67, 73–74.) She further testified that she could stand for an hour to an hour and a half before needing to sit down due to pain and tingling and that she

could sit for up to an hour and walk for up to 20 minutes with her dog before she had to stop because of back and neck pain. (AR 71–73.)

Plaintiff previously worked as a department manager, administrative clerk, general laborer, health unit clerk, and most recently as an optometrist assistant. (AR 88.) She testified that she could no longer work as an optometrist assistant because the job requires long periods of continuous sitting and the use of her hands for data entry. (AR 79.)

The fall to which Plaintiff referred took place on or about November 14, 2018 at a friend's house; Plaintiff struck her head on a wood pile and lost consciousness. (AR 385.) On November 19, 2018, she went to the emergency department for blurred vision and difficulty concentrating. (*Id.*) She was diagnosed with a concussion. (AR 337, 385.) On December 27, 2018, she returned for a follow-up visit and reported that she had continued having headaches, blurred vision, fatigue, and right shoulder pain. (AR 337.) The examining doctor noted muscle spasm on her upper right back and documented a full range of motion with pain in her shoulder after 90-degree elevation. (*Id.*) Plaintiff reported shoulder and back pain and headaches to several care providers over the course of the following two years. (*See, e.g.*, AR 304, 342, 344, 347, 353, 361, 376, 494, 580.)

On September 12, 2019, Plaintiff underwent an MRI which showed mild annular bulges at L2 through L5, mild-to-moderate left neural foraminal narrowing at C4–5, mild right neural foraminal narrowing at C5–6, and a small left lateral disc herniation at C6–7. (AR 303–04.) On November 11, 2019, Plaintiff visited with Dr. Todd Meredith, an internist, for treatment of her back pain and headache. (AR 347.) Dr. Meredith reviewed the MRI, which "showed a herniated disc at one cervical level without apparent nerve root impingement," as well as "some foraminal narrowing at multiple levels due to facet arthropathy." (*Id.*)

2

In January 2020, Dr. Michael Kenosh reported "electrodiagnostic evidence of right upper extremity median nerve entrapment neuropathy at the wrist consistent with carpal tunnel syndrome." (AR 367.) Dr. Kenosh also diagnosed cervical spondylosis with small disk herniation, neural foraminal narrowing, and mild-to-moderate neural foraminal narrowing, as well as carpal tunnel syndrome. (AR 363.)

Treating physiatrist Dr. Arabella Bull-Stewart referred Plaintiff to physical therapy in January 2020. (AR 494, 564.) Although Plaintiff had been physically active prior to her injury, she reported that she has not been able to exercise since her injury. (AR 564.) The physical therapy clinical findings indicated limitations in lifting, sitting, standing, walking, exercise, and sleep, as well as continued pain. (AR 564–567.) On July 2, 2020, Plaintiff reported that she had made only mild improvements since starting physical therapy (AR 569), though in February she had reported to Dr. Bull-Stewart that she had "some relief" and wished to continue physical therapy (AR 494). Between February 2020 and July 2020, Plaintiff continued seeing medical providers for carpal tunnel syndrome and neck, hand, and back pain alongside her psychiatric treatment. (*See, e.g.*, AR 451, 459, 477, 494, 569, 580.)

Besides her treatment for her physical health, Plaintiff also received treatment for her mental health. During fall 2018, Plaintiff attended three or four sessions with a psychotherapist "to address adjustment disorder with depression." (AR 347.) After the therapist moved to Virginia, Plaintiff did not continue therapy, though she reported being angry and frustrated at times. (AR 416.) In October 2019, Plaintiff underwent a psychological assessment with Hilary Linderman, PsyD. (AR 373.) Dr. Linderman diagnosed moderate to severe depression, mild to severe anxiety, and noted that Plaintiff's pain was an impediment to socializing. (*Id.*) She also listed "adjustment disorder with depressed mood" as a diagnostic impression. (AR 374.)

3

Plaintiff applied for disability insurance benefits on January 22, 2020, which was denied on May 14, 2020 and denied upon reconsideration on August 6, 2020. (AR 107–10, 117–21, 186–87.) Plaintiff appeared by telephone at her January 6, 2021 hearing in front of ALJ Edward Malvey, where she was represented by an attorney. (AR 28.) Vocational Expert ("VE") Ellen Levine appeared and testified by telephone. (AR 86.) The VE testified that Plaintiff's past work did not give her transferable skills; that being off-task between 15% and 20% of the time would preclude all employment; and that missing four or more days of work per month would preclude all employment. (AR 90.) The ALJ considered the opinions of four medical sources on Plaintiff's disability. Dr. Leslie Abramson provided an opinion for Disability Determination Services ("DDS") on February 26, 2020. (AR 93–99.) Dean Mooney, Ph.D. administered a consultative psychological evaluation in March 2020. (AR 451–55.) Dr. Geoff Knisely provided an opinion for DDS on July 21, 2020. (AR 101–06.) On September 30, 2020, Dr. Bull-Stewart also provided a medical opinion. (AR 583–86.)

Administrative Law Judge Malvey issued an unfavorable decision on February 1, 2021. (AR 25–41.) Plaintiff requested review of the decision on March 4, 2021. (AR 185.) The Appeals Council denied the request on November 17, 2021. (AR 1.) This appeal followed. Additional facts are set forth below as necessary.

## ALJ Decision

Social Security Administration regulations set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner considers "whether the claimant is currently engaged in substantial gainful activity." *Id.* Second, if the claimant is not currently engaged in substantial gainful activity, then the Commissioner considers "whether the claimant has a severe impairment

4

or combination of impairments." *Id.* Third, if the claimant does suffer from such an impairment, the inquiry is "whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments." *Id.* Fourth, if the claimant does not have a listed impairment, the Commissioner determines, "based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment." *Id.*

Finally, if the claimant is unable to perform past work, the Commissioner determines "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see* 20 C.F.R. § 404.1520. The claimant bears the burden of proving her case at steps one through four. *McIntyre*, 758 F.3d at 150. At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Employing this sequential analysis, ALJ Malvey first determined that Plaintiff has not engaged in substantial gainful activity since February 28, 2019. (AR 30.) At step two, the ALJ found that Plaintiff had the following severe impairments during the relevant period: cervical and lumbar degenerative disc disease and bilateral carpal tunnel syndrome. (*Id.*) The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*) The ALJ also found that the evidence in the medical record did not support Plaintiff's complaints of daily headaches and twice-monthly migraines. (AR 30–31.) Regarding psychological impairments, the ALJ found that Plaintiff's adjustment disorder and anxiety were non-severe. (AR 31.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in

20 C.F.R. § 404, Subpart P, App'x 1. (AR 33.) The ALJ discussed depression as a "symptom" in the discussion of the Paragraph B analysis for "adapting or managing oneself" but did not note depression as an independent diagnosis. (*See* AR 31–32.)

Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b), with the limitations that she can occasionally climb ladders, ropes, or scaffolds, frequently crawl, and frequently handle and finger bilaterally. (AR 33.)

At step four, the ALJ concluded that Plaintiff has past relevant work experience as an Administrative Clerk, DOT # 219.362-010, General Laborer, DOT # 609.684-014, and Health Unit Clerk, DOT # 245.362-014. (AR 36–37.) Relying on VE testimony, the ALJ concluded that Plaintiff is able to perform her past work as an Administrative Clerk and as a Health Unit Clerk. (AR 36.)

## Standard of Review

The Social Security Act (the "Act") defines disability, in pertinent part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant will only be found disabled if his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court conducts "a plenary review of the administrative record to determine if there is substantial evidence, considering the

record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam)); *see also* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). "[W]hether there is substantial evidence supporting the appellant's view is not the question . . .; rather, [the court] must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)).

The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff argues that reversal or remand is warranted because the ALJ "does not analyze the medical sources in a manner that allows the Court to discern why they should be considered more persuasive under the factors of supportability and consistency." (Doc. 8 at 2.)

In response, the Commissioner argues that the ALJ properly evaluated the medical opinions in the record. First, the Commissioner argues that the ALJ properly considered and evaluated the opinion of Dr. Bull-Stewart, Plaintiff's treating physician. (Doc. 11 at 3–5.) Second, the Commissioner argues that, even though the ALJ did not specifically note whether

the other physicians' opinions were persuasive, "any fair reading of the ALJ's decision shows that he found them to be so." (*Id.* at 6.)

After considering these claims and reviewing the record, the court finds that the ALJ's decision does not comply with the applicable regulations. The court briefly explains.

For claims filed on or after March 27, 2017, ALJs do not defer to, or give specific evidentiary weight to, any medical opinions. 20 C.F.R. § 404.1520c(a). Still, the ALJ must articulate the persuasiveness of *all* the medical opinions in the record. *Id.* § 404.1520c(b). ALJs must evaluate medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* § 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). Supportability is the extent to which an opinion or finding is supported by objective medical evidence and the medical source's supporting explanations, and consistency is the extent to which an opinion is consistent with other medical or non-medical sources. *Id.* § 404.1520c(c)(1)–(2). The ALJ is not required to consider relationship, specialization, and other factors unless two or more medical source opinions are found to be equally persuasive. *Id.* § 404.1520c(b)(3).

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-cv-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). "[T]he crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

8

In some instances, an ALJ's failure to adhere to the applicable regulations is not a harmless error and requires remand. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Although the Second Circuit has not yet held so explicitly, numerous district courts within the Second Circuit have found that an ALJ's failure to abide by the requirements of 20 C.F.R. §§ 404.1520c(b) or 416.920c(b) requires remand.[1] As the Social Security Administration explained in its revisions to the regulations, the requirement that an ALJ explicitly make a persuasiveness finding and include a discussion of consistency and supportability is necessary so that a reviewing court can trace an ALJ's decision. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017) ("We expect that the articulation requirements in these final rules will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning . . . .").

---

[1] *See, e.g.*, *Hilton v. Kijakazi*, __ F. Supp. 3d __, 2022 WL 1451476, at *4–5 (S.D.N.Y. 2022) (referring to 20 C.F.R. §§ 404.1520c(b) and 416.920c(b) and explaining that "under the current regulations, an ALJ's failure to properly consider and apply the requisite factors is grounds for remand"); *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 587 (S.D.N.Y. 2022) ("Remand is appropriate when the ALJ failed to apply the correct legal standard, including adequately considering and applying the new regulatory factors."); *Lewis v. Saul*, No. 21-CV-1493 (AMD), 2022 WL 4586241, at *8 (E.D.N.Y. Sept. 29, 2022) (remanding for ALJ to properly evaluate medical opinion of primary care physician under 20 C.F.R. § 404.1520c(b)(1)); *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *10 (N.D.N.Y. Feb. 18, 2022) (concluding that ALJ's failure to discuss supportability factor under 20 C.F.R. § 404.1520c(c)(1) was not harmless error); *Quiles v. Saul*, 19-CV-11181 (KNF), 2021 WL 848197, at *13 (S.D.N.Y. Mar. 5, 2021) (finding ALJ's failure to adhere to address consistency under 20 C.F.R. § 416.920c(b) wass legal error requiring remand); *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) ("[J]ust as under the previous regulations when failure to fully consider the *Burgess* factors . . . would be grounds for remanding an ALJ's decision, an ALJ's failure to adequately consider and apply the new regulatory factors also require a reviewing court to remand."); *Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631 (PKC), 2020 WL 5820566, at *8–11 (E.D.N.Y. Sept. 30, 2020) (remanding for ALJ to evaluate consistency and supportability under 20 C.F.R. § 404.1520c(b)).

9

Four medical sources submitted opinions on Plaintiff's disability. Dr. Leslie Abramson provided an opinion for DDS on February 26, 2020. (AR 93–99.) Dean Mooney, Ph.D. administered a consultative psychological evaluation in March 2020. (AR 451–55.) Dr. Geoff Knisely provided an opinion for DDS on July 21, 2020. (AR 101–06.) On September 30, 2020, Dr. Bull-Stewart provided a medical opinion. (AR 583–86.) Because the ALJ did not properly evaluate the persuasiveness of these medical opinions, the court must remand.

## I.     Dr. Arabella Bull-Stewart

The ALJ found that Dr. Bull-Stewart's "significantly restrictive residual functional capacity finding . . . is not persuasive because it is not supported by or consistent with either her limited examination findings or other objective findings." (AR 36.)

The ALJ's persuasiveness analysis concerning Dr. Bull-Stewart's RFC opinion complied with the regulations. The ALJ found Dr. Bull-Stewart's RFC opinion "not persuasive." (AR 36.) He addressed the factors of supportability and consistency and cited to specific examples in the medical record supporting his findings. (*Id.*)

Plaintiff, however, argues that the ALJ fell short in a few respects. First, Plaintiff argues that the ALJ did not consider whether Dr. Bull-Stewart's opinions are consistent with her physical therapy records. (Doc. 8 at 7.) But the ALJ did consider the physical therapy notes, explaining that "[d]uring a 2020 physical therapy session, the claimant reported that she was able to walk up to five miles" (AR 35 (citing Exhibit 9F).) And when discussing Dr. Bull-Stewart's opinion, the ALJ noted that her "assessment with regard to standing and walking is also contradicted by the claimant's own report that she can walk up to five miles daily." (AR 36.) This is the ALJ considering the physical therapy notes alongside Dr. Bull-Stewart's opinion. Plus, the ALJ need not "'reconcile every conflicting shred' of medical evidence" when

10

evaluating medical opinions. *Sesa v. Colvin*, 629 F. App'x 30, 33 (2d Cir. 2015) (summary order) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

Second, Plaintiff claims that the ALJ did not consider her headaches. But the ALJ did consider them and found them to be not severe. (AR 35.)

Third, Plaintiff argues that the that ALJ "clearly is convinced by the part of [Dr. Bull-Stewart's opinion] that finds Plaintiff has manipulative restrictions." (Doc. 8 at 6.) As the court explains in more detail below, however, this is not so clear, but it is a separate problem.

Therefore, the court rejects Plaintiff's arguments on this point and concludes that the ALJ properly complied with 20 C.F.R. § 404.1520c(b) regarding Dr. Bull-Stewart's opinion.

## II. Dr. Dean Mooney

Dr. Mooney conducted a consultative psychological evaluation in March 2020. (AR 451.) Dr. Mooney noted that Plaintiff reported diagnoses for PTSD and adjustment disorder. (AR 453.) He opined that Plaintiff had "[n]o diagnosis" and "appears to have the ability to understand, remember, and carry out instructions in a work setting." (AR 454.)

The ALJ considered Dr. Mooney's opinion and found it to be persuasive. (AR 31.) Beyond persuasiveness, "[a]n ALJ must [also] consider supportability and consistency in evaluating medical source opinions" and "[he] must also explain the analysis of those factors in the decision." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). The ALJ properly articulated his reasoning regarding Dr. Mooney's opinion.

The ALJ found Dr. Mooney's opinion "consistent with the examiner's own observations during his examinations, the unremarkable mental health treatment records, and the stable mental status examinations documented during the period under review." (*Id.*) The ALJ further determined that Dr. Mooney's opinion is supported by the "State agency psychological consultants, who also concluded that the claimant's adjustive disorder is not severe." (*Id.*) Although the ALJ did not expressly identify which State agency psychological consultants to which he is referring, the cited exhibits correspond to the opinions of Dr. Abramson and Dr. Knisely. (*Id.* (referencing Exhibits 2A and 4A).) For this opinion, therefore, the ALJ abided by the applicable regulations.

### III.  Dr. Leslie Abramson

Dr. Leslie Abramson reviewed Plaintiff's medical record and provided an opinion on disability. (AR 93–99.) Dr. Abramson opined that Plaintiff had "mild lumbar and mild/moderate cervical [degenerative disc disease], mild [carpal tunnel syndrome] at right wrist" and had "normal strength" with "normal gait." (AR 95.) Regarding psychological diagnoses, she opined that although Plaintiff's medical record "establishes adjustment disorder w/depressed mood despite recent [consultative examiner] not confirming a Psych [medically determinable impairment]." (AR 96.) As to Plaintiff's concussion, Dr. Abramson noted the report that Plaintiff suffered a concussion but explained "there are no indications that it represents a severe condition as there are no noted limitations as a consequence." (AR 96.)

The ALJ, however, did not assign any persuasiveness to Dr. Abramson's opinion. The ALJ referenced "agency consultants" findings, and Dr. Abramson's opinion as part of this group. (*See* AR 36.) The ALJ arguably addressed the consistency factor. (*See id.* ("Although there was evidence submitted after the State agency medical consultants reviewed the file and provided

their assessments, their assessments are consistent with the fairly mild examination findings received at the hearing level.").) But this is a conclusory statement based on a cursory analysis. *Elizabeth P.*, 2022 WL 507367, at *5–6 (collecting cases and explaining that ALJ must do more than a cursory analysis of a state agency consultant physician opinion). And the ALJ did not address the supportability factor as required by 20 C.F.R. § 404.1520c(b). The ALJ's failure to articulate whether Dr. Abramson's opinion was persuasive, adequately address the consistency factor, and failure to address the supportability factor is a legal error requiring remand. *See* note 1 above.

## IV.  Dr. Geoff Knisely

Dr. Knisely provided an opinion for DDS on July 21, 2020. (AR 101–06.) Dr. Knisely opined that Plaintiff's symptoms of pain, loss of sensation, and weakness are "partially consistent" with the evidence in the file, and that the "[s]everity of pain not fully consistent with mild findings on imaging and mostly intact exam findings." (AR 104.) As to RFC, Dr. Knisely opined that due to carpal tunnel and neck pain, Plaintiff has exertional limitations; and for postural limitations, Plaintiff should only occasionally climb ladders/ropes/scaffolds and frequently crawl. (AR 105.) Critical to Plaintiff's case, Dr. Knisely opined that Plaintiff had no manipulative limitations. (AR 105.)

The ALJ grouped Dr. Knisely's and Dr. Abramson's opinions together into the same paragraph, explaining that "the State medical consultant's . . . assessments are consistent with the fairly mild examination findings received at the hearing level." (AR 36.) As already analyzed regarding Dr. Abramson's opinion, the ALJ did not assign any persuasiveness to Dr. Knisely's opinion nor did the ALJ address the supportability and consistency factors as required. (*See* AR 33–36.) While already a reversible error, that failure is compounded regarding Dr. Knisely's

opinion because the ALJ appears to have relied almost exclusively on Dr. Knisely's RFC determination.

Although the ALJ did not say so explicitly, it appears that the ALJ adopted Dr. Knisely's RFC assessment almost in full.[2] (*Compare* AR 33–34, *with* AR 104–05.) The Commissioner believes this to be the case as well. (Doc. 11 at 6.) Like Dr. Knisely, the ALJ determined that Plaintiff has the RFC to perform light work with the limitation that she can "occasionally climb ladders ropes or scaffolds" and "can frequently crawl." (*Id.*) The only difference between Dr. Knisely's RFC assessment and the ALJ's is that Dr. Knisely opined that Plaintiff had no manipulative restrictions, while the ALJ included a manipulative limitation that Plaintiff could only "frequently handle and finger bilaterally." (AR 33.) This near total adoption of Dr. Knisely's RFC assessment without any explanation creates two problems requiring remand.

First, that the ALJ apparently based his RFC assessment entirely on Dr. Knisely, a state-appointed consultant is problematic. Although claims filed after March 27, 2017 are no longer subject to the treating-source rule, the current regulations "still recognize the foundational nature of the observations of treating sources." *Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631, 2020 WL 5820566, at *4 (E.D.N.Y. Sept. 30, 2020) (quoting *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)). Here, Plaintiff's treating physician, Dr. Bull-Stewart, opined that Plaintiff had exertional, postural, and manipulative limitations, but the ALJ found her opinion not persuasive. (AR 36.) Dr. Knisely, on the other hand, never examined Plaintiff and only reviewed Plaintiff's medical record. (*See* AR 36, 100–06.) But the ALJ never articulated whether he found Dr. Knisely's opinion to be persuasive or why. Because

---

[2] Dr. Abramson opined that Plaintiff had certain exertional limitations, but no postural or manipulative limitations. (AR 98.) Dr. Bull-Stewart opined that Plaintiff had multiple exertional, postural, and manipulative limitations. (AR 583–84.)

14

the ALJ adopted Dr. Knisely's opinion almost in full without any explanation means that this court cannot trace the ALJ's reasoning to ensure his RFC assessment is supported by substantial evidence.

Second, if it is true that the ALJ relied exclusively on Dr. Knisely's RFC assessment, that is another reversible error. That is because "RFC determinations that depend entirely on the opinions of non-examining experts and one-time consultative examiners are not supported by substantial evidence." *Lewis*, 2022 WL 4586241, at *9 (collecting cases). While *Lewis* is perhaps distinguishable because there the ALJ did not have any medical source statements, the Second Circuit, too, has "frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" *Estrella*, 925 F.3d at 98 (quoting *Selian*, 708 F.3d at 419). Here, the Commissioner argues that the ALJ's RFC assessment is "near-identical to the findings of the more recent state agency physician (Dr. Geoffrey Knisely's findings)." (Doc. 11 at 6.) The court agrees. If true, the ALJ's RFC assessment in this case may not be based on substantial evidence.

The Commissioner argues that, even though the ALJ did not articulate whether he found Dr. Knisely's opinion to be persuasive, "any fair reading of the ALJ's decision shows that he found them to be so." (Doc. 11 at 6.) It is true that some courts have found an ALJ's failure to articulate persuasiveness of a medical opinion to be harmless error. *See, e.g., Jesus v. Comm'r of Soc. Sec.*, No. 6:20-cv-1930-EJK, 2022 WL 2293887, at *4 (M.D. Fla. Feb. 9, 2022) (ALJ's failure to assign a level of persuasiveness to physician's opinion was harmless because ALJ's decision "when read as a whole" demonstrated why doctor's opinion was inconsistent with and not supported by other evidence (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004))). But that argument falls flat for two reasons. First, as noted above, the weight of authority in this

15

district is that an ALJ's failure to abide by the requirements of 20 C.F.R. §§ 404.1520c(b) and 416.920c(b) is a legal error requiring remand. Second, as already explained, the ALJ's cursory two-sentence analysis of the agency physicians' medical opinions is insufficient. *Elizabeth P.*, 2022 WL 507367, at *5–6.

The ALJ adoption of most, but not all, of Dr. Knisely's RFC assessment combined with the ALJ's decision to change Plaintiff's manipulative restrictions in one crucial aspect created another problem. As the ALJ elicited from the vocational expert at the hearing, the difference between a manipulative restriction of "occasionally" versus "frequently" handling and fingering bilaterally determined whether a person with the same RFC as Plaintiff here could perform Plaintiff's past work. (AR 88–89.) The vocational expert also testified there were no semi-skilled or skilled professions that Plaintiff could perform with a manipulative restriction of "occasionally." (AR 89.) In other words, had the ALJ upped the restriction to "occasionally" fingering and handling from "frequently," steps four and five of the disability determination would have been in Plaintiff's favor, entitling her to benefits.

Dr. Abramson and Dr. Knisely opined that Plaintiff had no manipulative restrictions. (AR 98, 105.) Dr. Bull-Stewart, on the other hand, opined that Plaintiff had more severe manipulative restrictions. (AR 584.) The ALJ discussed Dr. Bull-Stewart's manipulative limitations and declined to adopt them because "the examinations show only mild carpal tunnel symptoms with normal sensation and full range of motion of the hands, despite some positive Tinels signs and hand swelling noted on one examination." (AR 36.) The ALJ did not adopt any of Dr. Bull-Stewart's restrictions, but still included a manipulative restriction that Plaintiff could only "frequently handle and finger bilaterally," explaining that he did so "[i]n light of the

diagnosis with bilateral carpal tunnel syndrome and use of hand splints." (AR 33, 36.) As a result, the court is unable to trace the ALJ's reasoning.

The Commissioner argues that this is also not a reason for remand because the ALJ's inclusion of this manipulative limitation is more favorable to Plaintiff, meaning it is harmless error. (Doc. 11 at 7.) But the ALJ's failure to discuss the basis for his manipulative limitation is critical here where the difference between a manipulative limitation of "occasional" and "frequent" is outcome determinative for Plaintiff. *Cf. Jesus*, 2022 WL 2293887, at * 5 (finding failure to discuss medical opinion and assign persuasiveness was harmless error where it would not change the outcome). Because the only basis for any manipulative restriction was a medical opinion the ALJ rejected and because the ALJ did not otherwise explain why he included this restriction, the court rejects the Commissioner's argument that this is harmless error.

On remand, the ALJ must explain whether he found Dr. Knisely's opinion persuasive or not and whether that opinion is supported by the record and consistent with the record. 20 C.F.R. § 404.1520c(b). The ALJ must also explain his decision to include a manipulative restriction that does not align with either Dr. Bull-Stewart's assessment or the agency physicians' assessments.

## Conclusion

Because the ALJ failed to conduct the requisite persuasiveness analysis for each medical source in the record as required by the applicable regulations, remand is warranted. On remand, the ALJ must assign a persuasiveness value to every medical opinion in the record as required by the regulations. The ALJ must also explain the basis for his RFC determination.

For the foregoing reasons, Plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. 8) is GRANTED, the Commissioner's Motion for Order Affirming the

Decision of the Commissioner (Doc. 11) is DENIED, and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 24th day of February, 2023.

Geoffrey W. Crawford, Chief Judge
United States District Court